FILED

2018 Jul-18  PM 02:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT A

ELECTRONICALLY FILED
2018 6:07 PM
01-CV-2018-902344.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

| State of Alabama<br>Unified Judicial System<br><br>Form ARCiv-93   Rev.5/99 | **COVER SHEET<br>CIRCUIT COURT - CIVIL CASE**<br>(Not For Domestic Relations Cases) | Cas<br>01 |
|---|---|---|

Date of Filing: 06/11/2018          Judge Code:

## GENERAL INFORMATION

### IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA
### WILLIAM BAXLEY J ET AL v. JACK L HOWARD ET AL

**First Plaintiff:** ☐ Business  ☐ Individual  ☐ Government  ☑ Other

**First Defendant:** ☐ Business  ☐ Individual  ☐ Government  ☑ Other

**NATURE OF SUIT:** Select primary cause of action, by checking box (check only one) that best characterizes your action:

**TORTS: PERSONAL INJURY**
- ☐ WDEA - Wrongful Death
- ☐ TONG - Negligence: General
- ☐ TOMV - Negligence: Motor Vehicle
- ☐ TOWA - Wantonness
- ☐ TOPL - Product Liability/AEMLD
- ☐ TOMM - Malpractice-Medical
- ☐ TOLM - Malpractice-Legal
- ☐ TOOM - Malpractice-Other
- ☑ TBFM - Fraud/Bad Faith/Misrepresentation
- ☐ TOXX - Other: _____

**TORTS: PERSONAL INJURY**
- ☐ TOPE - Personal Property
- ☐ TORE - Real Property

**OTHER CIVIL FILINGS**
- ☐ ABAN - Abandoned Automobile
- ☐ ACCT - Account & Nonmortgage
- ☐ APAA - Administrative Agency Appeal
- ☐ ADPA - Administrative Procedure Act
- ☐ ANPS - Adults in Need of Protective Services

**OTHER CIVIL FILINGS (cont'd)**
- ☐ MSXX - Birth/Death Certificate Modification/Bond Forfeiture Appeal/ Enforcement of Agency Subpoena/Petition to Preserve
- ☐ CVRT - Civil Rights
- ☐ COND - Condemnation/Eminent Domain/Right-of-Way
- ☐ CTMP - Contempt of Court
- ☐ CONT - Contract/Ejectment/Writ of Seizure
- ☐ TOCN - Conversion
- ☐ EQND - Equity Non-Damages Actions/Declaratory Judgment/ Injunction Election Contest/Quiet Title/Sale For Division
- ☐ CVUD - Eviction Appeal/Unlawful Detainer
- ☐ FORJ - Foreign Judgment
- ☐ FORF - Fruits of Crime Forfeiture
- ☐ MSHC - Habeas Corpus/Extraordinary Writ/Mandamus/Prohibition
- ☐ PFAB - Protection From Abuse
- ☐ FELA - Railroad/Seaman (FELA)
- ☐ RPRO - Real Property
- ☐ WTEG - Will/Trust/Estate/Guardianship/Conservatorship
- ☐ COMP - Workers' Compensation
- ☐ CVXX - Miscellaneous Circuit Civil Case

**ORIGIN:**   F ☑ INITIAL FILING      A ☐ APPEAL FROM DISTRICT COURT      O ☐ OTHER

R ☐ REMANDED      T ☐ TRANSFERRED FROM OTHER CIRCUIT COURT

**HAS JURY TRIAL BEEN DEMANDED?** ☑ YES  ☐ NO    Note: Checking "Yes" does not constitute a demand for a jury trial. (See Rules 38 and 39, Ala.R.Civ.P, for procedure)

**RELIEF REQUESTED:**    ☑ MONETARY AWARD REQUESTED    ☐ NO MONETARY AWARD REQUESTED

**ATTORNEY CODE:**

| DON015 | 6/11/2018 6:07:36 PM | /s/ SHARON D. STUART |
|---|---|---|
| | Date | Signature of Attorney/Party filing this form |

**MEDIATION REQUESTED:**    ☐ YES  ☑ NO  ☐ UNDECIDED

ELECTRONICALLY FILED
7/9/2018 6:07 PM
01-CV-2018-902344.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

| | | |
|---|---|---|
| WILLIAM J. BAXLEY and MARIE A. PRAT BAXLEY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JACK L. HOWARD, STEEL EXCEL, INC., Fictitious Defendants A, B, C and D, being those persons, firms, corporations or entities who made certain misrepresentations to Plaintiffs; Fictitious Defendants E, F, G and H, being those persons, firms, corporations or entities who suppressed certain material facts from Plaintiffs; | ) ) ) ) ) ) ) ) ) ) ) | CV-_____ |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Come now Plaintiffs William J. Baxley ("Bill Baxley" or "Mr. Baxley") and Marie A. Prat Baxley ("Marie Baxley" or "Mrs. Baxley") (collectively, "Plaintiffs" or "the Baxleys"), and for their Complaint against the Defendants, state as follows:

1. Plaintiffs are residents and citizens of Jefferson County, Alabama.

2. Defendant Jack L. Howard is a resident and citizen of New York.

3. Defendant Steel Excel, Inc. ("Steel Excel" or the "Company") is a Delaware corporation with its principal place of business in New York. Steel Excel was formerly known as ADPT Corp. ("ADPT"), which was formerly known as Adaptec, Inc. ("Adaptec").

4. Fictitious Defendants "A", "B", "C", and "D", whether singular or plural, are those other persons, firms, corporations or other entities who made certain misrepresentations as alleged in this Complaint.

5.      Fictitious Defendants "E", "F", "G", and "H", whether singular or plural, are those other persons, firms, corporations or other entities who suppressed certain material facts as alleged in this Complaint.

6.      The Fictitious Defendants named in the foregoing paragraphs 4 and 5 of this Complaint ("the Fictitious Defendants") are presently unknown to Plaintiffs or their identities as proper party defendants are unknown, but they will be added by amendment when ascertained.

7.      This court has subject matter jurisdiction over this action because the matter in controversy exceeds the jurisdictional minimum of this court, exclusive of interest and costs.

8.      This court has personal jurisdiction over the Defendants because Defendants have minimum contacts with the State of Alabama such that they should reasonably anticipate being haled into Court in Alabama.  Further, under the circumstances, it is fair and reasonable to require Defendants to come to this State to defend this action.

9.      Venue is proper in this court because the subject of the action was in Jefferson County, Alabama when the claim arose and the representations and omissions upon which this action is founded were directed to Plaintiffs in Jefferson County, Plaintiffs relied upon those representations and omissions in Jefferson County, and Plaintiffs suffered damage in Jefferson County.

10.      Adaptec, a maker of storage equipment for computers, was founded in 1981. Adaptec was publicly traded on the NASDAQ exchange from 1986 to 2010.

11.      On or around December 5, 2005, Plaintiffs read an article in *Barron's* magazine touting Adaptec stock as a good investment.  The article noted that Adaptec boasted a solid franchise, approximately $2.50 per share in cash, net, an impressive line of new products that

targeted a promising technology niche, and a new chief executive officer.  Based on these factors, and primarily upon the amount of cash Adaptec held, Plaintiffs decided to purchase Adaptec stock.

12.     On or about December 6, 2005, Plaintiffs purchased 6,000 shares of common stock of Adaptec in the principal amount of approximately $34,000.00 through Marie Baxley's account.

13.     In or around 2007, Steel Partners LLC ("Steel Partners"), a privately owned hedge fund sponsor, made an initial investment in Adaptec.  Warren G. Lichtenstein ("Lichtenstein") was the founder and manager of Steel Partners.  Jack L. Howard ("Howard") was the President of Steel Partners.  John J. Quicke ("Quicke") was a Managing Director and operating partner of Steel Partners.

14.     In August 2007, Steel Partners and a private investment partnership launched by Steel Partners, known as Steel Partners II ("SP II"), began an election contest to put five directors on the Board of Adaptec.

15.     In or about October 2007, Adaptec entered a Settlement Agreement with Steel Partners and SP II to end the election contest.  The Settlement Agreement provided, among other things, that certain Adaptec board members would not stand for re-election and that the parties would nominate Howard, Quicke, and John Mutch ("Mutch"), all of whom were officers or partners of Steel Partners, for election to the Adaptec Board of Directors. Following the settlement, Howard became Chairman of the Adaptec Board.

16.     In approximately December 2008, Steel Partners began restructuring its business and that of SPII.  The result of this restructuring was the formation of Steel Partners Holdings LP ("SPLP"), a global diversified holding company which engages in various businesses through majority-owned subsidiaries, controlled companies and other interests.

17.     In or about July 2009, the restructuring plan was implemented and most of the former SP II investors, including the SPLP management team, including Howard, Lichtenstein and Quicke, became unit holders of SPLP.

18.     In August 2009, the Adaptec Board replaced Howard as chairman and thereafter appointed Joseph S. Kennedy, an independent director, as Chairman.

19.     In September 2009, SP II, together with SPLP, Steel Partners, SP II GP, Lichtenstein, Howard and Quicke (collectively "the Steel Group") made a consent solicitation, asking the stockholders of Adaptec to consent to three corporate actions: (1) a Bylaws Restoration Proposal, (2) a Removal Proposal, whereby two then-current members of the Board, Subramanian "Sundi" Sundaresh (who was also Adaptec's Chief Executive Officer) and Robert J. Loarie, would be removed and the Board reduced from nine to seven members, and (3) an Authorized Director Proposal whereby Adaptec's Bylaws would be amended to fix the number of Board members at seven.  As of September 2009, the Steel Group held approximately 10.9% of the outstanding Common Stock of Adaptec.

20.     One of the Steel Group's stated reasons for the consent solicitation was that it feared Adaptec's Legacy Directors would mismanage Adaptec's significant cash on hand and would allow management to squander the significant cash resources at Adaptec on ill-conceived business strategies and acquisitions.

21.     The Steel Group represented to stockholders that its interests were aligned with all other stockholders' interests.  The Steel Group represented that Messrs. Howard, Quicke and Mutch were committed to maximizing stockholder value for the benefit of all stockholders. The Steel Group represented that it would take no action that benefitted the Steel Group that did not also benefit all stockholders.

4

22.     Plaintiffs voted against the consent solicitation.  However, in or about November 2009, the majority of Adaptec shareholders voted in favor of the consent solicitation.  As a result, the Steel Group gained disproportionate representation on the Board through the membership of Howard, Quicke and Mutch on the Board, and thereby gained control of Adaptec.  Quicke was also appointed interim CEO of Adaptec.

23.     Following the approval of the consent solicitation, Plaintiffs were very concerned about the future of Adaptec, and in particular, they were concerned that the Board would embark on a course of action that would squander the company's cash.

24.     As a result of this concern, in or around December 2009, Plaintiff Bill Baxley called Adaptec's investor relations department in Milpitas, California, and left a message that he wanted to discuss the company's financial strategy.  Shortly thereafter, Mr. Baxley received a call from an individual who identified himself as the Investor Relations Partner of Adaptec, whom Mr. Baxley believes was Howard.  In their telephone conversation, Mr. Baxley explained to the Investor Relations Partner that he and Mrs. Baxley had purchased their stock because of the company's significant cash reserve and its large carryforward tax loss.  In particular, Mr. Baxley explained that he bought the stock because the company had almost the same amount per share in cash as the price per share at which the stock was selling.  Mr. Baxley also told the Investor Relations Partner, believed to be Howard, that he had learned through reading about the company's huge tax loss which was a valuable asset. Mr. Baxley expressed his concern that the strategy of the new board members was based on a different vision for the company than that previously held by Adaptec. He expressed his concern that the new board members and senior management would change the focus of the Company and deplete the company's cash reserves.  Mr. Baxley explained that he had not previously worried about holding Adaptec stock because the company had cash almost equal

5

to the amount per share that he paid for the stock.  Mr. Baxley asked specific questions about the financial position of the company, the direction of the company, the cash reserves and the company's net loss carryforwards.

25.     The Investor Relations Partner with whom Mr. Baxley spoke, believed to be Howard, was pleasant and non-confrontational. He answered Mr. Baxley's questions and explained that the Adaptec board understood and shared the Baxleys' concern. He stated that the interest of the board was the same as the Baxleys'.  Howard stated that he, the board and management were on top of the situation, and that they shared the Baxleys' goal to "preserve our capital."  He assured Mr. Baxley that the company was in a good cash position and that the company intended to preserve that position. He told Mr. Baxley that the company had good leads about what they were going to do with the tax loss.  He stated that the board was looking for a way to monetize the loss or convert it into value for the benefit of the stockholders.

26.     Mr. Baxley was reassured by these representations and reasonably relied upon them to his detriment. Mr. Baxley conveyed the representations made by Howard to Mrs. Baxley, who also reasonably relied to her detriment. As a direct result of the misrepresentations made by Howard, Plaintiffs believed that Howard and the other directors in fact shared their goals about preserving the company's cash reserves and other assets in order to maximize the value of Company for shareholders.

27.     The Baxleys reasonably and detrimentally relied on the aforesaid representations by continuing to hold their Adaptec stock, rather than selling it. In further reliance on the misrepresentations, Plaintiffs purchased additional shares of Adaptec stock.

28.     On or about December 14, 2009, Plaintiffs purchased 3,000 shares of common stock of Adaptec in the principal amount of $10,017.00 through Marie Baxley's account.

29.     On or about December 14, 2009, Plaintiffs purchased 3,000 shares of common stock of Adaptec in the principal amount of $9,987.00 through Bill Baxley's account.  On or about that same date, Plaintiffs purchased an additional 10,000 shares of common stock of Adaptec in the principal amount of $33,178.00 through Bill Baxley's account.

30.     However, these representations by Howard were false and Howard knew they were false when he made them. Howard and the other board members put on the board by SPLP in fact did not intend to preserve the Company's cash and utilize the tax losses for the benefit of other shareholders but, rather, intended to posture the Company so that SPLP could buy up all the stock and take the Company private.

31.     By March of 2010, SPLP had increased its ownership in Adaptec to approximately 19.5% of the outstanding shares. At that time, Adaptec had net cash of approximately $370 million and substantial net operating loss carryforwards.

32.     In or about June of 2010, Adaptec sold its operating business to PMC-Sierra for $34.3 million.

33.     In June 2010, ADPT was merged with and into Adaptec, and the Company changed its name to ADPT.

34.     On or about June 25, 2010, Plaintiffs purchased 1,000 shares of common stock of ADPT in the principal amount of $3,029.50 through Marie Baxley's account.

35.     On or about June 25, 2010, Plaintiffs purchased 6,000 shares of common stock of ADPT in the principal amount of $18,180.00 through Bill Baxley's account.

36.     On or about July 6, 2010, Plaintiff Marie Baxley's 10,000 shares of Adaptec stock were exchanged for 10,000 shares of ADPT stock.

37.     On or about July 6, 2010, Plaintiff Bill Baxley's 19,000 shares of Adaptec stock were exchanged for shares of ADPT.

38.     In or around October 2011, ADPT's name was changed to Steel Excel Inc. ("Steel Excel"). The Board of Directors delisted Steel Excel from NASDAQ and Steel Excel applied for a new ticker symbol for its shares of common stock for trading on the Pink Sheets. The delisting of Steel Excel made it much more difficult for Plaintiffs to obtain financial information about the company.

39.     In or about October 2011, the board caused Steel Excel to become a Delaware corporation for the purpose of allowing SPLP to take over all stock from all other shareholders, including Plaintiffs.

40.     Also in October 2011, Steel Excel announced that it had completed a Reverse/Forward stock split pursuant to which the shares of stockholders owning fewer than 500 shares were involuntarily purchased by the Company. Stockholders owning 500 or more shares of Steel Excel's common stock became entitled to one new share of Steel Excel's common stock in exchange for 10 of their old shares. The purpose and effect of the Reverse/Forward stock split was to reduce the number of the Company's outside shareholders and increase the percentage of outstanding shares owned by SPLP.  By virtue of the Reverse/Forward split, the Plaintiffs' 29,000 shares became 2,900 shares.

41.     In 2011, Steel Excel set up two new operating subsidiaries, Steel Sports, Inc., which was to build a business in the youth sports market, and Steel Energy, Inc., which was to buy oil service companies.

42.     By March of 2012, SPLP owned 51% of Steel Excel.

43.     In November 2012, the Steel Excel Board of Directors, including Lichtenstein, Howard and Quicke, authorized a stock repurchase program.  The repurchase program continued into 2014.

44.     In 2014, Steel Excel effected a 1 for 500 reverse stock split which resulted in the purchase of 297,047 shares of common stock from shareholders holding fewer than 500 shares.

45.     On or about July 7, 2015, Steel Excel's common stock commenced trading on the NASDAQ Capital Market.

46.     By 2016, SPLP had increased its holdings to over 60% of Steel Excel's stock, and the net cash held by the company had decreased from approximately $370 million in 2010 to approximately $50 million in 2016.

47.     In 2016, Steel Excel voluntarily delisted the Company's common stock from the NASDAQ capital market.

48.     In January 2017, SPLP made a tender offer for all outstanding shares of Steel Excel common stock. At this time SPLP already beneficially owned 64.2% of the outstanding shares of Steel Excel common stock. The tender offer was made pursuant to an agreement and plan of merger dated December 7, 2016 and amended December 23, 2016. In the offer, SPLP offered to exchange shares of Steel Excel's common stock for SPLP preferred units. Once the offer was completed, SPLP consummated a merger of a merger sub, SPH Acquisition Co., with and into Steel Excel, with Steel Excel continuing as the surviving corporation and as an indirect wholly-owned subsidiary of SPLP. The stated purpose of the merger was for SPLP to acquire all shares of Steel Excel common stock that it did not acquire in the tender offer. In the merger, each outstanding share of Steel Excel common stock, with limited exceptions, was converted into the

right to receive the transaction consideration, without interest. Former unaffiliated stockholders of Steel Excel no longer have any direct ownership interest in the surviving corporation.

49.     As a result of the merger, Plaintiffs would have been entitled to significantly less than the price for which they could have sold their shares in 2010.  Had Howard and Steel Excel truthfully stated the facts with respect to SPLP's plan to take over Steel Excel, or had not suppressed material facts from Plaintiffs, Plaintiffs would have sold their stock and would not have bought more stock.

### COUNT I – FRAUD

50.      Plaintiffs adopt and incorporate by reference paragraphs 1 - 49 of the Complaint as if set forth in full.

51.     In the telephone conversation with Plaintiff Bill Baxley, Defendant Howard made representations that the newly elected Adaptec board members, who were allegiant to SPLP, shared the Baxleys' goal to preserve the Company's capital, that the Company was in a good cash position and that the board intended to preserve that position. As an officer, board member and the Investor Relations Partner of the Company, Howard had the authority or apparent authority to speak for the Company and the board.  The representations made by Howard on behalf of the Company were material, and they were false.

52.     As an officer and board member of the Company and an SPLP insider, Howard was uniquely knowledgeable about the true plans of SPLP to squander the cash and carryforward losses of the Company and thereby devalue the stock so that SPLP could take over the Company.  At the time Howard made the representations to Mr. Baxley, Howard and the Company knew they were false.

53. Howard's misrepresentations to Mr. Baxley concerned material, existing facts, and were made intentionally, knowingly, recklessly or mistakenly.

54. Howard made these false statements for the purpose of inducing Plaintiffs to hold their Adaptec shares, which they in fact did in reliance on Howard's representations.

55. The Baxleys reasonably relied on these misrepresentations to their detriment by continuing to hold their stock and by purchasing more stock.  Had the Baxleys known that the Company, in fact, was not committed to preserving its cash position and the value of the Company, but rather planned to posture the Company so that it could be taken over by SPLP, the Baxleys would have sold their shares and would not have purchased more shares.

56. Howard's misrepresentations proximately caused damage to the Baxleys by causing them to continue to hold their stock and to purchase more stock and thereby to sustain a substantial loss when they otherwise would have sold the stock and would not have invested further in the Company.

57. The Baxleys did not discover, and reasonably could not have discovered, Howard's fraud until they received notice of SPLP's tender offer in January 2017.

58. As a result of Howard's misrepresentations, the Baxleys lost most of the value of their investments.

WHEREFORE, premises considered, Plaintiffs demand judgment against Howard and Steel Excel for compensatory and punitive damages, in amounts to be determined by a jury, plus interest, costs and such other relief to which they may be entitled.

## COUNT TWO – SUPPRESSION

59. Plaintiffs adopt and incorporate by reference paragraphs 1 - 58 of the Complaint as if set forth in full.

60.     Mr. Baxley posed specific questions to Howard regarding Adaptec's plans and strategy with respect to the Company's cash reserves and net operating loss carryforwards.  In response to these questions, Howard had a duty to disclose to Mr. Baxley that the new Adaptec board members did not intend to preserve the cash and utilize the tax losses for the benefit of other shareholders, but rather intended to posture the Company such that SPLP could buy up all the stock and take the Company private, leaving shareholders like the Baxleys holding stock with only a fraction of its previous value.  Howard suppressed these material facts from the Baxleys, causing the Baxleys to hold their stock and in fact buy additional stock, and sustain a substantial loss when they otherwise would have sold their stock and not bought more.

61.     The Baxleys did not discover, and reasonably could not have discovered, Howard's suppression of these material facts until they received notice of SPLP's tender offer in January 2017.

WHEREFORE, premises considered, Plaintiffs demand judgment against Howard and Steel Excel for compensatory and punitive damages, in amounts to be determined by a jury, plus interest, costs and such other relief to which they may be entitled.

### COUNT THREE - DECEIT

62.     Plaintiffs adopt and incorporate by references paragraphs 1- 61 of the Complaint as if set forth in full.

63.     The foregoing acts and omissions of Howard and the Company constitute deceit.

64.     The Baxleys did not discover, and reasonably could not have discovered, Howard's deceit until they received notice of SPLP' tender offer in January 2017.

WHEREFORE, premises considered, Plaintiffs demand judgment against Defendants for compensatory and punitive damages, in amounts to be determined by a jury, plus interest, costs and such other relief to which they may be entitled.

## COUNT FOUR – PROMISSORY ESTOPPEL

65.     Plaintiffs adopt and incorporate by reference paragraphs 1-64 of the Complaint as if set forth in full.

66.     Howard made a promise to the Baxleys that the Company would preserve its cash. Howard knew or reasonably should have known his promise would induce the Baxleys to hold their stock.  Howard's promise did, in fact, induce the Baxleys to forbear from selling their stock.

WHEREFORE, premises considered, the Baxleys demand judgment against Defendants for compensatory and punitive damages, in amounts to be determined by a jury, plus interest, costs and such other relief to which they may be entitled.

## COUNT FIVE – PROMISSORY FRAUD

67.     Plaintiffs adopt and incorporate by reference paragraphs 1-66 of the Complaint as if set forth in full.

68.     Howard made promises to the Baxleys that he did not intend to keep, thereby harming Plaintiffs.  As such, the foregoing statements, acts and omissions of Howard and the Company constitute promissory fraud.

WHEREFORE, premises considered, the Baxleys demand judgment against Defendants for compensatory and punitive damages, in amounts to be determined by a jury, plus interest, costs and such other relief to which they may be entitled.

## COUNT SIX – FRAUD BY FICTITIOUS DEFENDANTS

69.     Plaintiffs adopt and incorporate by reference paragraphs 1-68 of the Complaint as if set forth in full.

70.     Fictitious Defendants A, B, C, and/or D stated material facts to the Baxleys that they said were true.  The said Fictitious Defendant(s) knew when the statements were made that they were false, or made the statements without regard to the truth or falsity of the statements, or negligently made the statements.  The Baxleys did not know the statements were false.  The Baxleys reasonably relied on those statements to their detriment and the Fictitious Defendant(s) intended that they do so. In so relying, the Baxleys were caused to hold their stock and purchase additional stock, and sustained substantial damage as a result.

WHEREFORE, premises considered, the Baxleys demand judgment against the Fictitious Defendant(s) A, B, C and/or D and the Company, jointly and severally, for compensatory and punitive damages in an amount to be determined by a jury, plus interest, costs and such other relief to which they may be entitled.

## COUNT SIX – SUPPRESSION BY FICTITIOUS DEFENDANTS

71.     Plaintiffs adopt and incorporate by reference paragraphs 1-70 of the Complaint as if set forth in full.

72.     Fictitious Defendants E, F, G and/or H suppressed material facts from the Baxleys that they were under a duty to disclose. Mr. Baxley posed specific questions to Fictitious Defendant(s) E, F, G and/or H regarding the Company's strategy with respect to its cash reserves and net operating loss carryforwards.  In response to these questions, the Fictitious Defendant(s) had a duty to disclose to Mr. Baxley that the new Adaptec board members did not intend to preserve the cash and utilize the tax losses for the benefit of other shareholders, but rather intended

14

to posture the Company such that SPLP could buy up all the stock and take the Company private, leaving shareholders like the Baxleys holding stock with only a fraction of its previous value. The Fictitious Defendant(s) suppressed these material facts from the Baxleys, causing the Baxleys to hold their stock and in fact buy additional stock, and sustain a substantial loss when they otherwise would have sold their stock and not bought more.

73.     The Baxleys did not discover, and reasonably could not have discovered the suppression of these material facts until they received notice of SPLP's tender offer in January 2017.

WHEREFORE, premises considered, Plaintiffs demand judgment against Fictitious Defendant(s) E, F, G, and/or H and the Company, jointly and severally, for compensatory and punitive damages, in amounts to be determined by a jury, plus interest, costs and such other relief to which they may be entitled.

This the 11th day of June, 2018.

                                                        /s/ Sharon D. Stuart
                                                        DEBORAH ALLEY SMITH
                                                        SHARON D. STUART
                                                        Attorneys for Plaintiffs

OF COUNSEL:
CHRISTIAN & SMALL LLP
1800 Financial Center
505 North 20th Street
Birmingham, AL 35203
(205) 795-6588
dasmith@csattorneys.com
sdstuart@csattorneys.com


DEFENDANTS DEMAND A TRIAL BY STRUCK JURY.

                                                        /s/ Sharon D. Stuart

**DEFENDANTS TO BE SERVED BY CERTIFIED MAIL WITH A COPY OF THE SUMMONS AND COMPLAINT, TOGETHER WITH PLAINTIFFS' FIRST INTERROGATORIES AND REQUESTS FOR PRODUCTION TO DEFENDANTS:**

Jack L. Howard
212 W. 18th St. Apt. 11E
New York, NY 10011

Steel Excel, Inc.
c/o The Corporation Trust Company
Corporation Trust Center 1209 Orange Street
Wilmington, DE 19801

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

| | |
|---|---|
| WILLIAM J. BAXLEY and MARIE A. PRAT BAXLEY, | ) ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| JACK L. HOWARD, STEEL EXCEL, | ) |
| INC., Fictitious Defendants A, B, C and | ) |
| D, being those persons, firms, | ) |
| corporations or entities who made certain | ) |
| misrepresentations to Plaintiffs; | ) |
| Fictitious Defendants  E, F, G and H, | ) |
| being those persons, firms, corporations | ) |
| or entities who suppressed certain | ) |
| material facts from Plaintiffs; | ) |
| | ) |
| Defendants. | ) |

CV-_____

## PLAINTIFF'S FIRST INTERROGATORIES TO DEFENDANTS

Pursuant to Rule 33 of the Alabama Rules of Civil Procedure, Plaintiffs William J. Baxley and Marie A. Prat Baxley, ("Plaintiff") hereby propound the following interrogatories to Defendants Jack L. Howard and Steel Excel, Inc. ("Steel Excel").

## Instructions

1.     In responding to these interrogatories, you are required to furnish all documents available to you, including, but not limited to, documents in your possession, the possession of your attorneys, advisors or other persons directly or indirectly employed by you, your attorneys or anyone else otherwise subject to your control.

2.     To the extent that you consider any of the following interrogatories subject to objection or privilege, please respond to that part of the interrogatory to which you do not object

or assert privilege, and separately state that part of each interrogatory to which you object or assert privilege, and each ground for each such objection or assertion.

3.      These interrogatories are intended to be of a continuing nature. If additional documentation or information is discovered by you or your attorney at a later date, it should be communicated or produced immediately.

## Definitions

1.      The terms "You," "Your," and "Defendants'" mean Jack L. Howard, Steel Excel or both.

2.      Defendants are required to answer each interrogatory to the fullest extent possible. If a Defendant cannot respond to any part of the following interrogatories in full, respond to the extent possible, specifying the reason or reasons for your inability to respond to the remainder of the interrogatories. State whatever information, knowledge, belief or approximate estimate Defendant has concerning the unanswered portion.

3.      If you refer to (i.e., direct attention to) a document in answering any of these interrogatories, please attach a copy of said document or documents referred to in answer to these interrogatories.

4.      "Document(s)" is used in its broadest possible sense, and refers to all written, printed, typed, recorded, electronically stored, or other graphic matter of every kind or nature; all mechanical and electrical and sound recording and any transcripts thereof; all computer files (in every media in which such files are stored or located); all paper documents; and all emails in your possession, custody or control or known by you to exist. This definition of "document" includes, without restriction, all preliminary drafts of documents and copies thereof, all file folders, and all

2

labels, dividers, or markings indicating the manner in which any requested documents have been maintained.

5.    If you believe any of the following interrogatories are objectionable or call for information subject to a claimed privilege, answer as much of the interrogatory as is not, in your view, objectionable or subject to a claimed privilege.  Separately state the portion of the interrogatory to which you object or claim privilege, and state the basis for your objection or claim of privilege.

6.    These interrogatories are continuing in nature.  If further information comes into your possession or is brought to your attention or to your attorney's attention in the course of trial or preparation for trial, supplementation of the responses is required.

## INTERROGATORIES

1.    Identify the "investor relations partner(s)", that is the partner(s) responsible for investor relations communications, for Adaptec, Inc./ ADPT Corp. in 2009 and 2010.

**RESPONSE:**

2.    Identify all person(s) who answered or returned calls from investors for Adaptec, Inc./ADPT in 2009 and 2010.

**RESPONSE:**

3.    Identify each and every individual employed by or otherwise associated with Adaptec, Inc./ADPT Corp. who spoke with William J. Baxley by telephone in 2009 and 2010.

**RESPONSE:**

Respectfully submitted this the 11th day of June, 2018.


/s/ Sharon D. Stuart
DEBORAH ALLEY SMITH
SHARON D. STUART
Attorneys for Plaintiffs

OF COUNSEL:
CHRISTIAN & SMALL LLP
1800 Financial Center
505 North 20th Street
Birmingham, AL 35203
(205) 795-6588
dasmith@csattorneys.com
sdstuart@csattorneys.com


**DEFENDANTS TO BE SERVED BY CERTIFIED MAIL WITH THE SUMMONS AND COMPLAINT, TOGETHER WITH ALL DISCOVERY**

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

| | |
|---|---|
| WILLIAM J. BAXLEY and MARIE A. PRAT BAXLEY, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| JACK L. HOWARD, STEEL EXCEL, INC., Fictitious Defendants A, B, C and D, being those persons, firms, corporations or entities who made certain misrepresentations to Plaintiffs; Fictitious Defendants E, F, G and H, being those persons, firms, corporations or entities who suppressed certain material facts from Plaintiffs; | ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

CV-_____

## **PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION**

Plaintiffs William J. Baxley and Marie A. Prat Baxley, pursuant to Rule 34 of the Alabama Rules of Civil Procedure, hereby serve their first requests for production of documents on Defendants Jack L. Howard and Steel Excel, Inc.

### **DEFINITIONS AND INSTRUCTIONS**

1.     The terms "You," "Your," and "Defendants" mean Jack L. Howard, Steel Excel, Inc., or both.  The terms also include and includes its or their representatives, officers, managers, principals, agents, and attorneys.

2.     "Person" is defined as any natural person or any business, legal or governmental entity, or association.

3.     "Document(s)" is used in its broadest possible sense, and refers to all written, printed, typed, recorded, electronically stored, or other graphic matter of every kind or nature; all mechanical and electrical and sound recording and any transcripts thereof; all computer files (in

every media in which such files are stored or located); all paper documents; and all emails in your possession, custody or control or known by you to exist. This definition of "document" includes, without restriction, all preliminary drafts of documents and copies thereof, all file folders, and all labels, dividers, or markings indicating the manner in which any requested documents have been maintained.

4.     The term "computer files" includes all information stored in or accessible through computer or other information retrieval systems, including certain specified metadata (see Form of Production, below). Thus, you should produce documents that exist in machine-readable form, including documents stored in personal computers, laptop computers, tablets, cellular phones, Blackberries, workstations, minicomputers, mainframes, servers, remote "cloud" storage, backup disks and tapes, and other forms of offline storage.

5.     "Communication" means any transmittal or recordation of information in any form or of any kind.

6.     When referring to a person, "identify" means to give, to the extent known:

(a)     the person's full name;

(b)     present or last known address, and telephone number; and

(c)     when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in compliance with this paragraph, only the name of that person need be listed in response to later discovery requesting the identification of that person.

7.     When referring to documents, "identify" means to give, to the extent known, the following information:

(a)     the type of document;

(b)     the general subject matter;

(c)     the date of the document;

(d)     the authors, addressees, and recipients;

(e)     the location of the document;

(f)     the identity of the person who has custody of the documents; and

(g)     whether the document has been destroyed, and if so the:

      (i)     date of the destruction;

      (ii)     reason for its destruction; and

      (iii)     identity of the person who destroyed it.

8.     "Relating" is used in its broadest possible extent and means concerning, referring, describing, evidencing, or constituting, directly or indirectly.

9.     The terms "all" and "each" shall be construed as "and," "each" and "and/or."

10.     The term "any" should he understood in either its most or least inclusive sense as will bring within scope of the discovery request all responses that might otherwise be construed to be out of its scope.

11.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed outside of its scope.

12.     The use of the singular form of any word includes the plural and vice-versa.

13.     To the extent that you consider any of the following requests subject to objection, please respond to that part of the request to which you do not object, and separately state that part of each request to which you object, and each ground for each such objection.

14.     If you claim or contend that any request seeks a document or thing protected by any type of privilege, please provide a privilege log identifying the request and document or

thing involved with particularity, and describe in detail the nature of the privilege asserted and the circumstances and facts upon which the claim of privilege is based.

15.    Form of production: Unless otherwise specified herein as to a particular file type, or agreed upon following appropriate meet and confer efforts, computer files should be printed and produced in hard copy, if such documents total less than 500 pages. If responsive documents are 500 or more pages, they should be produced in machine readable form (provided that you determine prior to production that it would be in a format that allows counsel to use the computer files), together with instructions and all other materials necessary to use or interpret the data. Alternatively, they may be produced as static images, accompanied by an index file derived from all text within the documents and a load file containing appropriately organized metadata fields herein requested and checksum or hash values (e.g., MD5 or SHA-1). Electronic mail and instant messaging messages should also be provided in an electronic format that is readable using native software (e.g. PST files for Exchange email). Text messages may be produced either as emails or photographic images of a screen of a telephone displaying the test message, along with the indication of sender, all recipients, and time sent or received. Spreadsheets and accounting files (such as reports from QuickBooks, Peachtree, or other accounting or bookkeeping software) should be produced in native format. Any information produced as a result of a database query should include a description of the query sufficiently detailed as to allow duplicated search results, reports, or output. Metadata fields sought for native format include those that indicate (to the extent applicable to a given file type): author, custodian, file name, pathname, computer/location, date created, date modified, date accessed, to, from, date sent, date received, attachments, forwarding, and any other metadata commonly utilized by commercially available document

analysis and review systems. Social media postings should be the subject of a meet and confer process before production.

16.    If you claim documents requested for production are privileged, please provide a privilege log in the form specified by Alabama Rule of Civil Procedure 26(b)(5).

## REQUESTS FOR PRODUCTION

1.    Any and all documents which evidence, refer or relate to investor relations calls regarding Adaptec, Inc. or ADPT Corp. in 2009 or 2010.

2.    All call logs for Adaptec, Inc. or ADPT Corp. for 2009 and 2010.

3.    Produce any and all recordings, transcripts of recordings and notes of telephone calls between Adaptec, Inc. / ADPT Corp. and William J. Baxley.

4.    Produce any and all strategic plans and/or business plans, and any documents related to those plans, for Adaptec, Inc., ADPT Corp., and/or Steel Excel from 2008 to the present.

5.    Produce any and all documents related to the financial strategy of Adaptec, Inc., ADPT Corp. and/or Steel Excel from 2008 to present.

6.    Produce any and all documents related to Adaptec's goals or plans from 2008 through 2010 for utilization of Adaptec's cash reserves and/or carryforward tax losses.

7.    Produce any and all documents which reflect, refer or relate to communications between Jack L. Howard and any of the other Steel Partners regarding Steel Excel.

This the 11th day of June, 2018.


                                        /s/ Sharon D. Stuart
                                        DEBORAH ALLEY SMITH

SHARON D. STUART
Attorneys for Plaintiffs

OF COUNSEL:
CHRISTIAN & SMALL LLP
1800 Financial Center
505 North 20th Street
Birmingham, AL 35203
(205) 795-6588
dasmith@csattorneys.com
sdstuart@csattorneys.com


**DEFENDANTS TO BE SERVED BY CERTIFIED MAIL WITH THE SUMMONS AND COMPLAINT, TOGETHER WITH ALL DISCOVERY**



AlaFile E-Notice

01-CV-2018-902344.00

To:   SHARON D. STUART
      sdstuart@csattorneys.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

WILLIAM BAXLEY J ET AL V. JACK L HOWARD ET AL
01-CV-2018-902344.00

The following complaint was FILED on 6/11/2018 6:07:56 PM

Notice Date:      6/11/2018 6:07:56 PM

ANNE-MARIE ADAMS
CIRCUIT COURT CLERK
JEFFERSON COUNTY, ALABAMA
JEFFERSON COUNTY, ALABAMA
716 N. RICHARD ARRINGTON BLVD.
BIRMINGHAM, AL, 35203

205-325-5355
anne-marie.adams@alacourt.gov



AlaFile E-Notice

01-CV-2018-902344.00

To:   JACK L HOWARD
      212 W. 18TH STREET
      APT. 11E
      NEW YORK, NY, 10011

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

WILLIAM BAXLEY J ET AL V. JACK L HOWARD ET AL
01-CV-2018-902344.00

The following complaint was FILED on 6/11/2018 6:07:56 PM

Notice Date:      6/11/2018 6:07:56 PM

ANNE-MARIE ADAMS
CIRCUIT COURT CLERK
JEFFERSON COUNTY, ALABAMA
JEFFERSON COUNTY, ALABAMA
716 N. RICHARD ARRINGTON BLVD.
BIRMINGHAM, AL, 35203

205-325-5355
anne-marie.adams@alacourt.gov



AlaFile E-Notice

01-CV-2018-902344.00

To:  STEEL EXCEL, INC.
     THE CORPORATION TRUST CO
     1209 ORANGE STREET
     WILMINGTON, DE, 19801

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

WILLIAM BAXLEY J ET AL V. JACK L HOWARD ET AL
01-CV-2018-902344.00

The following complaint was FILED on 6/11/2018 6:07:56 PM

Notice Date:     6/11/2018 6:07:56 PM

ANNE-MARIE ADAMS
CIRCUIT COURT CLERK
JEFFERSON COUNTY, ALABAMA
JEFFERSON COUNTY, ALABAMA
716 N. RICHARD ARRINGTON BLVD.
BIRMINGHAM, AL, 35203

205-325-5355
anne-marie.adams@alacourt.gov

| State of Alabama<br>Unified Judicial System<br>Form C-34  Rev. 4/2017 | **SUMMONS**<br>**- CIVIL -** | **Court Case Number**<br>01-CV-2018-902344.00 |
|---|---|---|

## IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA
### WILLIAM BAXLEY J ET AL V. JACK L HOWARD ET AL

**NOTICE TO:**  JACK L HOWARD, 212 W. 18TH STREET APT. 11E, NEW YORK, NY 10011

*(Name and Address of Defendant)*

THE COMPLAINT OR OTHER DOCUMENT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT, AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT OR OTHER DOCUMENT, WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF(S) OR ATTORNEY(S) OF THE PLAINTIFF(S), SHARON D. STUART ,

*[Name(s) of Attorney(s)]*

WHOSE ADDRESS(ES) IS/ARE: 500 NORTH 20TH STREET, SUITE 1800, BIRMINGHAM, AL 35203 .

*[Address(es) of Plaintiff(s) or Attorney(s)]*

THE ANSWER MUST BE MAILED OR DELIVERED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT OR OTHER DOCUMENT WERE SERVED ON YOU OR A JUDGMENT BY DEFAULT MAY BE RENDERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT OR OTHER DOCUMENT.

### TO ANY SHERIFF OR ANY PERSON AUTHORIZED BY THE ALABAMA RULES OF CIVIL PROCEDURE TO SERVE PROCESS:

☐ You are hereby commanded to serve this Summons and a copy of the Complaint or other document in this action upon the above-named Defendant.

☑ Service by certified mail of this Summons is initiated upon the written request of WILLIAM BAXLEY J

pursuit to the Alabama Rules of the Civil Procedure.                     *[Name(s)]*

| 6/11/2018 6:07:56 PM | /s/ ANNE-MARIE ADAMS | By: |
|---|---|---|
| *(Date)* | *(Signature of Clerk)* | *(Name)* |

☑ Certified Mail is hereby requested.          /s/ SHARON D. STUART

*(Plaintiff's/Attorney's Signature)*

## RETURN ON SERVICE

☐ Return receipt of certified mail received in this office on _____ .

*(Date)*

☐ I certify that I personally delivered a copy of this Summons and Complaint or other document to _____

_____ in _____ County,

*(Name of Person Served)*            *(Name of County)*

Alabama on _____ .

*(Date)*

| _____ | _____ | _____ |
|---|---|---|
| *(Type of Process Server)* | *(Server's Signature)* | *(Address of Server)* |
| | _____ | _____ |
| | *(Server's Printed Name)* | *(Phone Number of Server)* |

| State of Alabama<br>Unified Judicial System<br>Form C-34   Rev. 4/2017 | **SUMMONS**<br>**- CIVIL -** | **Court Case Number**<br>01-CV-2018-902344.00 |
|---|---|---|

### IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA
### WILLIAM BAXLEY J ET AL V. JACK L HOWARD ET AL

**NOTICE TO:** STEEL EXCEL, INC., THE CORPORATION TRUST CO 1209 ORANGE STREET, WILMINGTON, DE 19801

*(Name and Address of Defendant)*

THE COMPLAINT OR OTHER DOCUMENT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT, AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT OR OTHER DOCUMENT, WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF(S) OR ATTORNEY(S) OF THE PLAINTIFF(S), SHARON D. STUART ,

*(Name(s) of Attorney(s))*

WHOSE ADDRESS(ES) IS/ARE: 500 NORTH 20TH STREET, SUITE 1800, BIRMINGHAM, AL 35203 .

*(Address(es) of Plaintiff(s) or Attorney(s))*

THE ANSWER MUST BE MAILED OR DELIVERED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT OR OTHER DOCUMENT WERE SERVED ON YOU OR A JUDGMENT BY DEFAULT MAY BE RENDERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT OR OTHER DOCUMENT.

### TO ANY SHERIFF OR ANY PERSON AUTHORIZED BY THE ALABAMA RULES OF CIVIL PROCEDURE TO SERVE PROCESS:

☐ You are hereby commanded to serve this Summons and a copy of the Complaint or other document in this action upon the above-named Defendant.

☑ Service by certified mail of this Summons is initiated upon the written request of WILLIAM BAXLEY J

*[Name(s)]*

pursuant to the Alabama Rules of the Civil Procedure.

6/11/2018 6:07:56 PM          /s/ ANNE-MARIE ADAMS          By: _____

*(Date)*          *(Signature of Clerk)*          *(Name)*

☑ Certified Mail is hereby requested.          /s/ SHARON D. STUART

*(Plaintiff's/Attorney's Signature)*

### RETURN ON SERVICE

☐ Return receipt of certified mail received in this office on _____ .

*(Date)*

☐ I certify that I personally delivered a copy of this Summons and Complaint or other document to _____

_____ in _____ County,

*(Name of Person Served)*          *(Name of County)*

Alabama on _____ .

*(Date)*

_____          _____          _____

*(Type of Process Server)*          *(Server's Signature)*          *(Address of Server)*

_____          _____

*(Server's Printed Name)*          *(Phone Number of Server)*

Return Receipt (Form 3811) Barcode

9590 9699 0430 0047 5628 74

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X ☐ Agent
☐ Addressee

B. Received by (Printed Name)
RECEIVED JUN 18

C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

1. Article Addressed to:

STEEL EXCEL, INC.
C/O THE CORPORATION TRUST COMPANY
1209 N ORANGE ST
CORPORATION TRUST CENTER
WILMINGTON, DE 19801-1196

3. Service Type:
☒ Certified Mail
☐ Certified Mail Restricted Delivery

-CV-2016-902344.00

2. Certified Mail Article Number 28   72

PS Form 3811, Facsimile, July 2015

Domestic Return Receipt

**United States**
**Postal Service®**

● Sender: Please print your name, address and ZIP+4® below ●

Anne Marie Adams
Circuit Court Clerk
Jefferson County, Alabama
716 N. Richard Arrington Blvd.
Birmingham, AL 35203

FILED IN OFFICE
CIRCUIT CIVIL DIVISION

JUL 02 2018

ANNE-MARIE ADAMS
CLERK

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10



AlaFile E-Notice

01-CV-2018-902344.00

Judge: TAMARA HARRIS JOHNSON

To:  STUART SHARON DONALDSON
    sdstuart@csattorneys.com

# NOTICE OF SERVICE

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

WILLIAM BAXLEY J ET AL V. JACK L HOWARD ET AL
01-CV-2018-902344.00

The following matter was served on 6/18/2018

**D002 STEEL EXCEL, INC.**
**Corresponding To**
CERTIFIED MAIL

ANNE-MARIE ADAMS
CIRCUIT COURT CLERK
JEFFERSON COUNTY, ALABAMA
JEFFERSON COUNTY, ALABAMA
716 N. RICHARD ARRINGTON BLVD.
BIRMINGHAM, AL, 35203

205-325-5355
anne-marie.adams@alacourt.gov



ELECTRONICALLY FILED
6/11/2018 2:16 PM
01-CV-2018-902344.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

AlaFile E-Notice

01-CV-2018-902344.00

To:   SHARON D. STUART
      sdstuart@csattorneys.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

WILLIAM BAXLEY J ET AL V. JACK L HOWARD ET AL
01-CV-2018-902344.00

The following complaint was FILED on 6/11/2018 6:07:56 PM

Notice Date:       6/11/2018 6:07:56 PM

ANNE-MARIE ADAMS
CIRCUIT COURT CLERK
JEFFERSON COUNTY, ALABAMA
JEFFERSON COUNTY, ALABAMA
716 N. RICHARD ARRINGTON BLVD.
BIRMINGHAM, AL, 35203

205-325-5355
anne-marie.adams@alacourt.gov

ELECTRONICALLY FILED
6/11/2018 6:07 PM
01-CV-2018-902344.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

| State of Alabama<br>Unified Judicial System<br><br>Form ARCiv-93   Rev.5/99 | **COVER SHEET**<br>**CIRCUIT COURT - CIVIL CASE**<br>(Not For Domestic Relations Cases) | Case<br>01<br><br>Date of Filing:<br>06/11/2018 | Judge Code: |
|---|---|---|---|

## GENERAL INFORMATION

### IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA
### WILLIAM BAXLEY J ET AL v. JACK L HOWARD ET AL

First Plaintiff:  ☐ Business   ☐ Individual          First Defendant:  ☐ Business   ☐ Individual
                  ☐ Government ☑ Other                                 ☐ Government ☑ Other

---

**NATURE OF SUIT:** Select primary cause of action, by checking box (check only one) that best characterizes your action:

**TORTS: PERSONAL INJURY**
☐ WDEA - Wrongful Death
☐ TONG - Negligence: General
☐ TOMV - Negligence: Motor Vehicle
☐ TOWA - Wantonness
☐ TOPL - Product Liability/AEMLD
☐ TOMM - Malpractice-Medical
☐ TOLM - Malpractice-Legal
☐ TOOM - Malpractice-Other
☑ TBFM - Fraud/Bad Faith/Misrepresentation
☐ TOXX - Other: _____

**TORTS: PERSONAL INJURY**
☐ TOPE - Personal Property
☐ TORE - Real Properly

**OTHER CIVIL FILINGS**
☐ ABAN - Abandoned Automobile
☐ ACCT - Account & Nonmortgage
☐ APAA - Administrative Agency Appeal
☐ ADPA - Administrative Procedure Act
☐ ANPS - Adults in Need of Protective Services

**OTHER CIVIL FILINGS  (cont'd)**
☐ MSXX - Birth/Death Certificate Modification/Bond Forfeiture Appeal/
          Enforcement of Agency Subpoena/Petition to Preserve
☐ CVRT - Civil Rights
☐ COND - Condemnation/Eminent Domain/Right-of-Way
☐ CTMP - Contempt of Court
☐ CONT - Contract/Ejectment/Writ of Seizure
☐ TOCN - Conversion
☐ EQND - Equity Non-Damages Actions/Declaratory Judgment/
          Injunction Election Contest/Quiet Title/Sale For Division
☐ CVUD - Eviction Appeal/Unlawful Detainer
☐ FORJ - Foreign Judgment
☐ FORF - Fruits of Crime Forfeiture
☐ MSHC - Habeas Corpus/Extraordinary Writ/Mandamus/Prohibition
☐ PFAB - Protection From Abuse
☐ FELA - Railroad/Seaman (FELA)
☐ RPRO - Real Property
☐ WTEG - Will/Trust/Estate/Guardianship/Conservatorship
☐ COMP - Workers' Compensation
☐ CVXX - Miscellaneous Circuit Civil Case

---

**ORIGIN:**   F ☑ INITIAL FILING          A ☐ APPEAL FROM          O ☐ OTHER
                                              DISTRICT COURT

              R ☐ REMANDED                 T ☐ TRANSFERRED FROM
                                              OTHER CIRCUIT COURT

---

**HAS JURY TRIAL BEEN DEMANDED?**  ☑ YES  ☐ NO    **Note:** Checking "Yes" does not constitute a demand for a
                                                    jury trial. (See Rules 38 and 39, Ala.R.Civ.P, for procedure)

---

**RELIEF REQUESTED:**   ☑ MONETARY AWARD REQUESTED   ☐ NO MONETARY AWARD REQUESTED

---

**ATTORNEY CODE:**

| DON015 | 6/11/2018 6:07:36 PM | /s/ SHARON D. STUART |
|---|---|---|
| | Date | Signature of Attorney/Party filing this form |

---

**MEDIATION REQUESTED:**        ☐ YES  ☑ NO  ☐ UNDECIDED

ELECTRONICALLY FILED
6/01/2018 6:07 PM
01-CV-2018-902344.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

## IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

| | |
|---|---|
| WILLIAM J. BAXLEY and MARIE A. PRAT BAXLEY, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| JACK L. HOWARD, STEEL EXCEL, INC., Fictitious Defendants A, B, C and D, being those persons, firms, corporations or entities who made certain misrepresentations to Plaintiffs; Fictitious Defendants E, F, G and H, being those persons, firms, corporations or entities who suppressed certain material facts from Plaintiffs; | ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

CV-_____

## COMPLAINT

Come now Plaintiffs William J. Baxley ("Bill Baxley" or "Mr. Baxley") and Marie A. Prat Baxley ("Marie Baxley" or "Mrs. Baxley") (collectively, "Plaintiffs" or "the Baxleys"), and for their Complaint against the Defendants, state as follows:

1.      Plaintiffs are residents and citizens of Jefferson County, Alabama.

2.      Defendant Jack L. Howard is a resident and citizen of New York.

3.      Defendant Steel Excel, Inc. ("Steel Excel" or the "Company") is a Delaware corporation with its principal place of business in New York.  Steel Excel was formerly known as ADPT Corp. ("ADPT"), which was formerly known as Adaptec, Inc. ("Adaptec").

4.      Fictitious Defendants "A", "B", "C", and "D", whether singular or plural, are those other persons, firms, corporations or other entities who made certain misrepresentations as alleged in this Complaint.

5.     Fictitious Defendants "E", "F", "G", and "H", whether singular or plural, are those other persons, firms, corporations or other entities who suppressed certain material facts as alleged in this Complaint.

6.     The Fictitious Defendants named in the foregoing paragraphs 4 and 5 of this Complaint ("the Fictitious Defendants") are presently unknown to Plaintiffs or their identities as proper party defendants are unknown, but they will be added by amendment when ascertained.

7.     This court has subject matter jurisdiction over this action because the matter in controversy exceeds the jurisdictional minimum of this court, exclusive of interest and costs.

8.     This court has personal jurisdiction over the Defendants because Defendants have minimum contacts with the State of Alabama such that they should reasonably anticipate being haled into Court in Alabama.  Further, under the circumstances, it is fair and reasonable to require Defendants to come to this State to defend this action.

9.     Venue is proper in this court because the subject of the action was in Jefferson County, Alabama when the claim arose and the representations and omissions upon which this action is founded were directed to Plaintiffs in Jefferson County, Plaintiffs relied upon those representations and omissions in Jefferson County, and Plaintiffs suffered damage in Jefferson County.

10.    Adaptec, a maker of storage equipment for computers, was founded in 1981. Adaptec was publicly traded on the NASDAQ exchange from 1986 to 2010.

11.    On or around December 5, 2005, Plaintiffs read an article in *Barron's* magazine touting Adaptec stock as a good investment.  The article noted that Adaptec boasted a solid franchise, approximately $2.50 per share in cash, net, an impressive line of new products that

targeted a promising technology niche, and a new chief executive officer.  Based on these factors, and primarily upon the amount of cash Adaptec held, Plaintiffs decided to purchase Adaptec stock.

12.   On or about December 6, 2005, Plaintiffs purchased 6,000 shares of common stock of Adaptec in the principal amount of approximately $34,000.00 through Marie Baxley's account.

13.   In or around 2007, Steel Partners LLC ("Steel Partners"), a privately owned hedge fund sponsor, made an initial investment in Adaptec.  Warren G. Lichtenstein ("Lichtenstein") was the founder and manager of Steel Partners.  Jack L. Howard ("Howard") was the President of Steel Partners.  John J. Quicke ("Quicke") was a Managing Director and operating partner of Steel Partners.

14.   In August 2007, Steel Partners and a private investment partnership launched by Steel Partners, known as Steel Partners II ("SP II"), began an election contest to put five directors on the Board of Adaptec.

15.   In or about October 2007, Adaptec entered a Settlement Agreement with Steel Partners and SP II to end the election contest.  The Settlement Agreement provided, among other things, that certain Adaptec board members would not stand for re-election and that the parties would nominate Howard, Quicke, and John Mutch ("Mutch"), all of whom were officers or partners of Steel Partners, for election to the Adaptec Board of Directors. Following the settlement, Howard became Chairman of the Adaptec Board.

16.   In approximately December 2008, Steel Partners began restructuring its business and that of SPII.  The result of this restructuring was the formation of Steel Partners Holdings LP ("SPLP"), a global diversified holding company which engages in various businesses through majority-owned subsidiaries, controlled companies and other interests.

17.     In or about July 2009, the restructuring plan was implemented and most of the former SP II investors, including the SPLP management team, including Howard, Lichtenstein and Quicke, became unit holders of SPLP.

18.     In August 2009, the Adaptec Board replaced Howard as chairman and thereafter appointed Joseph S. Kennedy, an independent director, as Chairman.

19.     In September 2009, SP II, together with SPLP, Steel Partners, SP II GP, Lichtenstein, Howard and Quicke (collectively "the Steel Group") made a consent solicitation, asking the stockholders of Adaptec to consent to three corporate actions: (1) a Bylaws Restoration Proposal, (2) a Removal Proposal, whereby two then-current members of the Board, Subramanian "Sundi" Sundaresh (who was also Adaptec's Chief Executive Officer) and Robert J. Loarie, would be removed and the Board reduced from nine to seven members, and (3) an Authorized Director Proposal whereby Adaptec's Bylaws would be amended to fix the number of Board members at seven.  As of September 2009, the Steel Group held approximately 10.9% of the outstanding Common Stock of Adaptec.

20.     One of the Steel Group's stated reasons for the consent solicitation was that it feared Adaptec's Legacy Directors would mismanage Adaptec's significant cash on hand and would allow management to squander the significant cash resources at Adaptec on ill-conceived business strategies and acquisitions.

21.     The Steel Group represented to stockholders that its interests were aligned with all other stockholders' interests.  The Steel Group represented that Messrs. Howard, Quicke and Mutch were committed to maximizing stockholder value for the benefit of all stockholders. The Steel Group represented that it would take no action that benefitted the Steel Group that did not also benefit all stockholders.

22.     Plaintiffs voted against the consent solicitation.  However, in or about November 2009, the majority of Adaptec shareholders voted in favor of the consent solicitation.  As a result, the Steel Group gained disproportionate representation on the Board through the membership of Howard, Quicke and Mutch on the Board, and thereby gained control of Adaptec.  Quicke was also appointed interim CEO of Adaptec.

23.     Following the approval of the consent solicitation, Plaintiffs were very concerned about the future of Adaptec, and in particular, they were concerned that the Board would embark on a course of action that would squander the company's cash.

24.     As a result of this concern, in or around December 2009, Plaintiff Bill Baxley called Adaptec's investor relations department in Milpitas, California, and left a message that he wanted to discuss the company's financial strategy.  Shortly thereafter, Mr. Baxley received a call from an individual who identified himself as the Investor Relations Partner of Adaptec, whom Mr. Baxley believes was Howard.  In their telephone conversation, Mr. Baxley explained to the Investor Relations Partner that he and Mrs. Baxley had purchased their stock because of the company's significant cash reserve and its large carryforward tax loss.  In particular, Mr. Baxley explained that he bought the stock because the company had almost the same amount per share in cash as the price per share at which the stock was selling.  Mr. Baxley also told the Investor Relations Partner, believed to be Howard, that he had learned through reading about the company's huge tax loss which was a valuable asset. Mr. Baxley expressed his concern that the strategy of the new board members was based on a different vision for the company than that previously held by Adaptec. He expressed his concern that the new board members and senior management would change the focus of the Company and deplete the company's cash reserves.  Mr. Baxley explained that he had not previously worried about holding Adaptec stock because the company had cash almost equal

5

to the amount per share that he paid for the stock.  Mr. Baxley asked specific questions about the financial position of the company, the direction of the company, the cash reserves and the company's net loss carryforwards.

25.     The Investor Relations Partner with whom Mr. Baxley spoke, believed to be Howard, was pleasant and non-confrontational. He answered Mr. Baxley's questions and explained that the Adaptec board understood and shared the Baxleys' concern. He stated that the interest of the board was the same as the Baxleys'.  Howard stated that he, the board and management were on top of the situation, and that they shared the Baxleys' goal to "preserve our capital."  He assured Mr. Baxley that the company was in a good cash position and that the company intended to preserve that position. He told Mr. Baxley that the company had good leads about what they were going to do with the tax loss.  He stated that the board was looking for a way to monetize the loss or convert it into value for the benefit of the stockholders.

26.     Mr. Baxley was reassured by these representations and reasonably relied upon them to his detriment. Mr. Baxley conveyed the representations made by Howard to Mrs. Baxley, who also reasonably relied to her detriment. As a direct result of the misrepresentations made by Howard, Plaintiffs believed that Howard and the other directors in fact shared their goals about preserving the company's cash reserves and other assets in order to maximize the value of Company for shareholders.

27.     The Baxleys reasonably and detrimentally relied on the aforesaid representations by continuing to hold their Adaptec stock, rather than selling it. In further reliance on the misrepresentations, Plaintiffs purchased additional shares of Adaptec stock.

28.     On or about December 14, 2009, Plaintiffs purchased 3,000 shares of common stock of Adaptec in the principal amount of $10,017.00 through Marie Baxley's account.

29.     On or about December 14, 2009, Plaintiffs purchased 3,000 shares of common stock of Adaptec in the principal amount of $9,987.00 through Bill Baxley's account.  On or about that same date, Plaintiffs purchased an additional 10,000 shares of common stock of Adaptec in the principal amount of $33,178.00 through Bill Baxley's account.

30.     However, these representations by Howard were false and Howard knew they were false when he made them. Howard and the other board members put on the board by SPLP in fact did not intend to preserve the Company's cash and utilize the tax losses for the benefit of other shareholders but, rather, intended to posture the Company so that SPLP could buy up all the stock and take the Company private.

31.     By March of 2010, SPLP had increased its ownership in Adaptec to approximately 19.5% of the outstanding shares. At that time, Adaptec had net cash of approximately $370 million and substantial net operating loss carryforwards.

32.     In or about June of 2010, Adaptec sold its operating business to PMC-Sierra for $34.3 million.

33.     In June 2010, ADPT was merged with and into Adaptec, and the Company changed its name to ADPT.

34.     On or about June 25, 2010, Plaintiffs purchased 1,000 shares of common stock of ADPT in the principal amount of $3,029.50 through Marie Baxley's account.

35.     On or about June 25, 2010, Plaintiffs purchased 6,000 shares of common stock of ADPT in the principal amount of $18,180.00 through Bill Baxley's account.

36.     On or about July 6, 2010, Plaintiff Marie Baxley's 10,000 shares of Adaptec stock were exchanged for 10,000 shares of ADPT stock.

37.     On or about July 6, 2010, Plaintiff Bill Baxley's 19,000 shares of Adaptec stock were exchanged for shares of ADPT.

38.     In or around October 2011, ADPT's name was changed to Steel Excel Inc. ("Steel Excel"). The Board of Directors delisted Steel Excel from NASDAQ and Steel Excel applied for a new ticker symbol for its shares of common stock for trading on the Pink Sheets. The delisting of Steel Excel made it much more difficult for Plaintiffs to obtain financial information about the company.

39.     In or about October 2011, the board caused Steel Excel to become a Delaware corporation for the purpose of allowing SPLP to take over all stock from all other shareholders, including Plaintiffs.

40.     Also in October 2011, Steel Excel announced that it had completed a Reverse/Forward stock split pursuant to which the shares of stockholders owning fewer than 500 shares were involuntarily purchased by the Company. Stockholders owning 500 or more shares of Steel Excel's common stock became entitled to one new share of Steel Excel's common stock in exchange for 10 of their old shares. The purpose and effect of the Reverse/Forward stock split was to reduce the number of the Company's outside shareholders and increase the percentage of outstanding shares owned by SPLP.  By virtue of the Reverse/Forward split, the Plaintiffs' 29,000 shares became 2,900 shares.

41.     In 2011, Steel Excel set up two new operating subsidiaries, Steel Sports, Inc., which was to build a business in the youth sports market, and Steel Energy, Inc., which was to buy oil service companies.

42.     By March of 2012, SPLP owned 51% of Steel Excel.

8

43.     In November 2012, the Steel Excel Board of Directors, including Lichtenstein, Howard and Quicke, authorized a stock repurchase program. The repurchase program continued into 2014.

44.     In 2014, Steel Excel effected a 1 for 500 reverse stock split which resulted in the purchase of 297,047 shares of common stock from shareholders holding fewer than 500 shares.

45.     On or about July 7, 2015, Steel Excel's common stock commenced trading on the NASDAQ Capital Market.

46.     By 2016, SPLP had increased its holdings to over 60% of Steel Excel's stock, and the net cash held by the company had decreased from approximately $370 million in 2010 to approximately $50 million in 2016.

47.     In 2016, Steel Excel voluntarily delisted the Company's common stock from the NASDAQ capital market.

48.     In January 2017, SPLP made a tender offer for all outstanding shares of Steel Excel common stock. At this time SPLP already beneficially owned 64.2% of the outstanding shares of Steel Excel common stock. The tender offer was made pursuant to an agreement and plan of merger dated December 7, 2016 and amended December 23, 2016. In the offer, SPLP offered to exchange shares of Steel Excel's common stock for SPLP preferred units. Once the offer was completed, SPLP consummated a merger of a merger sub, SPH Acquisition Co., with and into Steel Excel, with Steel Excel continuing as the surviving corporation and as an indirect wholly-owned subsidiary of SPLP. The stated purpose of the merger was for SPLP to acquire all shares of Steel Excel common stock that it did not acquire in the tender offer. In the merger, each outstanding share of Steel Excel common stock, with limited exceptions, was converted into the

right to receive the transaction consideration, without interest. Former unaffiliated stockholders of Steel Excel no longer have any direct ownership interest in the surviving corporation.

49.     As a result of the merger, Plaintiffs would have been entitled to significantly less than the price for which they could have sold their shares in 2010.  Had Howard and Steel Excel truthfully stated the facts with respect to SPLP's plan to take over Steel Excel, or had not suppressed material facts from Plaintiffs, Plaintiffs would have sold their stock and would not have bought more stock.

## COUNT I – FRAUD

50.      Plaintiffs adopt and incorporate by reference paragraphs 1 - 49 of the Complaint as if set forth in full.

51.     In the telephone conversation with Plaintiff Bill Baxley, Defendant Howard made representations that the newly elected Adaptec board members, who were allegiant to SPLP, shared the Baxleys' goal to preserve the Company's capital, that the Company was in a good cash position and that the board intended to preserve that position. As an officer, board member and the Investor Relations Partner of the Company, Howard had the authority or apparent authority to speak for the Company and the board.  The representations made by Howard on behalf of the Company were material, and they were false.

52.     As an officer and board member of the Company and an SPLP insider, Howard was uniquely knowledgeable about the true plans of SPLP to squander the cash and carryforward losses of the Company and thereby devalue the stock so that SPLP could take over the Company.  At the time Howard made the representations to Mr. Baxley, Howard and the Company knew they were false.

53.     Howard's misrepresentations to Mr. Baxley concerned material, existing facts, and were made intentionally, knowingly, recklessly or mistakenly.

54.     Howard made these false statements for the purpose of inducing Plaintiffs to hold their Adaptec shares, which they in fact did in reliance on Howard's representations.

55.     The Baxleys reasonably relied on these misrepresentations to their detriment by continuing to hold their stock and by purchasing more stock.  Had the Baxleys known that the Company, in fact, was not committed to preserving its cash position and the value of the Company, but rather planned to posture the Company so that it could be taken over by SPLP, the Baxleys would have sold their shares and would not have purchased more shares.

56.     Howard's misrepresentations proximately caused damage to the Baxleys by causing them to continue to hold their stock and to purchase more stock and thereby to sustain a substantial loss when they otherwise would have sold the stock and would not have invested further in the Company.

57.     The Baxleys did not discover, and reasonably could not have discovered, Howard's fraud until they received notice of SPLP's tender offer in January 2017.

58.     As a result of Howard's misrepresentations, the Baxleys lost most of the value of their investments.

WHEREFORE, premises considered, Plaintiffs demand judgment against Howard and Steel Excel for compensatory and punitive damages, in amounts to be determined by a jury, plus interest, costs and such other relief to which they may be entitled.

## COUNT TWO – SUPPRESSION

59.     Plaintiffs adopt and incorporate by reference paragraphs 1 - 58 of the Complaint as if set forth in full.

60.     Mr. Baxley posed specific questions to Howard regarding Adaptec's plans and strategy with respect to the Company's cash reserves and net operating loss carryforwards.  In response to these questions, Howard had a duty to disclose to Mr. Baxley that the new Adaptec board members did not intend to preserve the cash and utilize the tax losses for the benefit of other shareholders, but rather intended to posture the Company such that SPLP could buy up all the stock and take the Company private, leaving shareholders like the Baxleys holding stock with only a fraction of its previous value.  Howard suppressed these material facts from the Baxleys, causing the Baxleys to hold their stock and in fact buy additional stock, and sustain a substantial loss when they otherwise would have sold their stock and not bought more.

61.     The Baxleys did not discover, and reasonably could not have discovered, Howard's suppression of these material facts until they received notice of SPLP's tender offer in January 2017.

WHEREFORE, premises considered, Plaintiffs demand judgment against Howard and Steel Excel for compensatory and punitive damages, in amounts to be determined by a jury, plus interest, costs and such other relief to which they may be entitled.

## COUNT THREE - DECEIT

62.     Plaintiffs adopt and incorporate by references paragraphs 1- 61 of the Complaint as if set forth in full.

63.     The foregoing acts and omissions of Howard and the Company constitute deceit.

64.     The Baxleys did not discover, and reasonably could not have discovered, Howard's deceit until they received notice of SPLP' tender offer in January 2017.

WHEREFORE, premises considered, Plaintiffs demand judgment against Defendants for compensatory and punitive damages, in amounts to be determined by a jury, plus interest, costs and such other relief to which they may be entitled.

## COUNT FOUR – PROMISSORY ESTOPPEL

65.     Plaintiffs adopt and incorporate by reference paragraphs 1-64 of the Complaint as if set forth in full.

66.     Howard made a promise to the Baxleys that the Company would preserve its cash. Howard knew or reasonably should have known his promise would induce the Baxleys to hold their stock.  Howard's promise did, in fact, induce the Baxleys to forbear from selling their stock.

WHEREFORE, premises considered, the Baxleys demand judgment against Defendants for compensatory and punitive damages, in amounts to be determined by a jury, plus interest, costs and such other relief to which they may be entitled.

## COUNT FIVE – PROMISSORY FRAUD

67.     Plaintiffs adopt and incorporate by reference paragraphs 1-66 of the Complaint as if set forth in full.

68.     Howard made promises to the Baxleys that he did not intend to keep, thereby harming Plaintiffs.  As such, the foregoing statements, acts and omissions of Howard and the Company constitute promissory fraud.

WHEREFORE, premises considered, the Baxleys demand judgment against Defendants for compensatory and punitive damages, in amounts to be determined by a jury, plus interest, costs and such other relief to which they may be entitled.

## COUNT SIX – FRAUD BY FICTITIOUS DEFENDANTS

69.     Plaintiffs adopt and incorporate by reference paragraphs 1-68 of the Complaint as if set forth in full.

70.     Fictitious Defendants A, B, C, and/or D stated material facts to the Baxleys that they said were true.  The said Fictitious Defendant(s) knew when the statements were made that they were false, or made the statements without regard to the truth or falsity of the statements, or negligently made the statements.  The Baxleys did not know the statements were false.  The Baxleys reasonably relied on those statements to their detriment and the Fictitious Defendant(s) intended that they do so. In so relying, the Baxleys were caused to hold their stock and purchase additional stock, and sustained substantial damage as a result.

WHEREFORE, premises considered, the Baxleys demand judgment against the Fictitious Defendant(s) A, B, C and/or D and the Company, jointly and severally, for compensatory and punitive damages in an amount to be determined by a jury, plus interest, costs and such other relief to which they may be entitled.

## COUNT SIX – SUPPRESSION BY FICTITIOUS DEFENDANTS

71.     Plaintiffs adopt and incorporate by reference paragraphs 1-70 of the Complaint as if set forth in full.

72.     Fictitious Defendants E, F, G and/or H suppressed material facts from the Baxleys that they were under a duty to disclose. Mr. Baxley posed specific questions to Fictitious Defendant(s) E, F, G and/or H regarding the Company's strategy with respect to its cash reserves and net operating loss carryforwards.  In response to these questions, the Fictitious Defendant(s) had a duty to disclose to Mr. Baxley that the new Adaptec board members did not intend to preserve the cash and utilize the tax losses for the benefit of other shareholders, but rather intended

to posture the Company such that SPLP could buy up all the stock and take the Company private, leaving shareholders like the Baxleys holding stock with only a fraction of its previous value. The Fictitious Defendant(s) suppressed these material facts from the Baxleys, causing the Baxleys to hold their stock and in fact buy additional stock, and sustain a substantial loss when they otherwise would have sold their stock and not bought more.

73. The Baxleys did not discover, and reasonably could not have discovered the suppression of these material facts until they received notice of SPLP's tender offer in January 2017.

WHEREFORE, premises considered, Plaintiffs demand judgment against Fictitious Defendant(s) E, F, G, and/or H and the Company, jointly and severally, for compensatory and punitive damages, in amounts to be determined by a jury, plus interest, costs and such other relief to which they may be entitled.

This the 11th day of June, 2018.

/s/ Sharon D. Stuart
DEBORAH ALLEY SMITH
SHARON D. STUART
Attorneys for Plaintiffs

OF COUNSEL:
CHRISTIAN & SMALL LLP
1800 Financial Center
505 North 20th Street
Birmingham, AL 35203
(205) 795-6588
dasmith@csattorneys.com
sdstuart@csattorneys.com

DEFENDANTS DEMAND A TRIAL BY STRUCK JURY.

/s/ Sharon D. Stuart

**DEFENDANTS TO BE SERVED BY CERTIFIED MAIL WITH A COPY OF THE SUMMONS AND COMPLAINT, TOGETHER WITH PLAINTIFFS' FIRST INTERROGATORIES AND REQUESTS FOR PRODUCTION TO DEFENDANTS:**

Jack L. Howard
212 W. 18th St. Apt. 11E
New York, NY 10011

Steel Excel, Inc.
c/o The Corporation Trust Company
Corporation Trust Center 1209 Orange Street
Wilmington, DE 19801

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

| | | |
|---|---|---|
| WILLIAM J. BAXLEY and MARIE A. | ) | |
| PRAT BAXLEY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JACK L. HOWARD, STEEL EXCEL, | ) | |
| INC., Fictitious Defendants A, B, C and | ) | CV-_____ |
| D, being those persons, firms, | ) | |
| corporations or entities who made certain | ) | |
| misrepresentations to Plaintiffs; | ) | |
| Fictitious Defendants E, F, G and H, | ) | |
| being those persons, firms, corporations | ) | |
| or entities who suppressed certain | ) | |
| material facts from Plaintiffs; | ) | |
| | ) | |
| Defendants. | ) | |

## **PLAINTIFF'S FIRST INTERROGATORIES TO DEFENDANTS**

Pursuant to Rule 33 of the Alabama Rules of Civil Procedure, Plaintiffs William J. Baxley and Marie A. Prat Baxley, ("Plaintiff") hereby propound the following interrogatories to Defendants Jack L. Howard and Steel Excel, Inc. ("Steel Excel").

## **Instructions**

1.     In responding to these interrogatories, you are required to furnish all documents available to you, including, but not limited to, documents in your possession, the possession of your attorneys, advisors or other persons directly or indirectly employed by you, your attorneys or anyone else otherwise subject to your control.

2.     To the extent that you consider any of the following interrogatories subject to objection or privilege, please respond to that part of the interrogatory to which you do not object

or assert privilege, and separately state that part of each interrogatory to which you object or assert privilege, and each ground for each such objection or assertion.

3.      These interrogatories are intended to be of a continuing nature. If additional documentation or information is discovered by you or your attorney at a later date, it should be communicated or produced immediately.

### Definitions

1.      The terms "You," "Your," and "Defendants'" mean Jack L. Howard, Steel Excel or both.

2.      Defendants are required to answer each interrogatory to the fullest extent possible. If a Defendant cannot respond to any part of the following interrogatories in full, respond to the extent possible, specifying the reason or reasons for your inability to respond to the remainder of the interrogatories. State whatever information, knowledge, belief or approximate estimate Defendant has concerning the unanswered portion.

3.      If you refer to (i.e., direct attention to) a document in answering any of these interrogatories, please attach a copy of said document or documents referred to in answer to these interrogatories.

4.      "Document(s)" is used in its broadest possible sense, and refers to all written, printed, typed, recorded, electronically stored, or other graphic matter of every kind or nature; all mechanical and electrical and sound recording and any transcripts thereof; all computer files (in every media in which such files are stored or located); all paper documents; and all emails in your possession, custody or control or known by you to exist. This definition of "document" includes, without restriction, all preliminary drafts of documents and copies thereof, all file folders, and all

labels, dividers, or markings indicating the manner in which any requested documents have been maintained.

5.     If you believe any of the following interrogatories are objectionable or call for information subject to a claimed privilege, answer as much of the interrogatory as is not, in your view, objectionable or subject to a claimed privilege.  Separately state the portion of the interrogatory to which you object or claim privilege, and state the basis for your objection or claim of privilege.

6.     These interrogatories are continuing in nature.  If further information comes into your possession or is brought to your attention or to your attorney's attention in the course of trial or preparation for trial, supplementation of the responses is required.

## INTERROGATORIES

1.     Identify the "investor relations partner(s)", that is the partner(s) responsible for investor relations communications, for Adaptec, Inc./ ADPT Corp. in 2009 and 2010.

**RESPONSE:**


2.     Identify all person(s) who answered or returned calls from investors for Adaptec, Inc./ADPT in 2009 and 2010.

**RESPONSE:**


3.     Identify each and every individual employed by or otherwise associated with Adaptec, Inc./ADPT Corp. who spoke with William J. Baxley by telephone in 2009 and 2010.

**RESPONSE:**

Respectfully submitted this the 11th day of June, 2018.


                                                    /s/ Sharon D. Stuart
                                                    DEBORAH ALLEY SMITH
                                                    SHARON D. STUART
                                                    Attorneys for Plaintiffs

OF COUNSEL:
CHRISTIAN & SMALL LLP
1800 Financial Center
505 North 20th Street
Birmingham, AL 35203
(205) 795-6588
dasmith@csattorneys.com
sdstuart@csattorneys.com


**DEFENDANTS TO BE SERVED BY CERTIFIED MAIL WITH THE SUMMONS AND COMPLAINT, TOGETHER WITH ALL DISCOVERY**

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

| | | |
|---|---|---|
| WILLIAM J. BAXLEY and MARIE A. PRAT BAXLEY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JACK L. HOWARD, STEEL EXCEL, INC., Fictitious Defendants A, B, C and D, being those persons, firms, corporations or entities who made certain misrepresentations to Plaintiffs; Fictitious Defendants E, F, G and H, being those persons, firms, corporations or entities who suppressed certain material facts from Plaintiffs; | ) | CV-_____ |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION

Plaintiffs William J. Baxley and Marie A. Prat Baxley, pursuant to Rule 34 of the Alabama Rules of Civil Procedure, hereby serve their first requests for production of documents on Defendants Jack L. Howard and Steel Excel, Inc.

### DEFINITIONS AND INSTRUCTIONS

1.      The terms "You," "Your," and "Defendants" mean Jack L. Howard, Steel Excel, Inc., or both.  The terms also include and includes its or their representatives, officers, managers, principals, agents, and attorneys.

2.      "Person" is defined as any natural person or any business, legal or governmental entity, or association.

3.      "Document(s)" is used in its broadest possible sense, and refers to all written, printed, typed, recorded, electronically stored, or other graphic matter of every kind or nature; all mechanical and electrical and sound recording and any transcripts thereof; all computer files (in

every media in which such files are stored or located); all paper documents; and all emails in your possession, custody or control or known by you to exist. This definition of "document" includes, without restriction, all preliminary drafts of documents and copies thereof, all file folders, and all labels, dividers, or markings indicating the manner in which any requested documents have been maintained.

4.     The term "computer files" includes all information stored in or accessible through computer or other information retrieval systems, including certain specified metadata (see Form of Production, below). Thus, you should produce documents that exist in machine-readable form, including documents stored in personal computers, laptop computers, tablets, cellular phones, Blackberries, workstations, minicomputers, mainframes, servers, remote "cloud" storage, backup disks and tapes, and other forms of offline storage.

5.     "Communication" means any transmittal or recordation of information in any form or of any kind.

6.     When referring to a person, "identify" means to give, to the extent known:

(a)     the person's full name;

(b)     present or last known address, and telephone number; and

(c)     when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in compliance with this paragraph, only the name of that person need be listed in response to later discovery requesting the identification of that person.

7.     When referring to documents, "identify" means to give, to the extent known, the following information:

(a)     the type of document;

(b)     the general subject matter;

(c)     the date of the document;

(d)     the authors, addressees, and recipients;

(e)     the location of the document;

(f)     the identity of the person who has custody of the documents; and

(g)     whether the document has been destroyed, and if so the:

       (i)     date of the destruction;

       (ii)     reason for its destruction; and

       (iii)     identity of the person who destroyed it.

8.    "Relating" is used in its broadest possible extent and means concerning, referring, describing, evidencing, or constituting, directly or indirectly.

9.    The terms "all" and "each" shall be construed as "and," "each" and "and/or."

10.    The term "any" should he understood in either its most or least inclusive sense as will bring within scope of the discovery request all responses that might otherwise be construed to be out of its scope.

11.    The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed outside of its scope.

12.    The use of the singular form of any word includes the plural and vice-versa.

13.    To the extent that you consider any of the following requests subject to objection, please respond to that part of the request to which you do not object, and separately state that part of each request to which you object, and each ground for each such objection.

14.    If you claim or contend that any request seeks a document or thing protected by any type of privilege, please provide a privilege log identifying the request and document or

thing involved with particularity, and describe in detail the nature of the privilege asserted and the circumstances and facts upon which the claim of privilege is based.

15.     Form of production: Unless otherwise specified herein as to a particular file type, or agreed upon following appropriate meet and confer efforts, computer files should be printed and produced in hard copy, if such documents total less than 500 pages. If responsive documents are 500 or more pages, they should be produced in machine readable form (provided that you determine prior to production that it would be in a format that allows counsel to use the computer files), together with instructions and all other materials necessary to use or interpret the data. Alternatively, they may be produced as static images, accompanied by an index file derived from all text within the documents and a load file containing appropriately organized metadata fields herein requested and checksum or hash values (e.g., MD5 or SHA-1). Electronic mail and instant messaging messages should also be provided in an electronic format that is readable using native software (e.g. PST files for Exchange email). Text messages may be produced either as emails or photographic images of a screen of a telephone displaying the test message, along with the indication of sender, all recipients, and time sent or received. Spreadsheets and accounting files (such as reports from QuickBooks, Peachtree, or other accounting or bookkeeping software) should be produced in native format. Any information produced as a result of a database query should include a description of the query sufficiently detailed as to allow duplicated search results, reports, or output. Metadata fields sought for native format include those that indicate (to the extent applicable to a given file type): author, custodian, file name, pathname, computer/location, date created, date modified, date accessed, to, from, date sent, date received, attachments, forwarding, and any other metadata commonly utilized by commercially available document

analysis and review systems. Social media postings should be the subject of a meet and confer process before production.

16.    If you claim documents requested for production are privileged, please provide a privilege log in the form specified by Alabama Rule of Civil Procedure 26(b)(5).

## REQUESTS FOR PRODUCTION

1.    Any and all documents which evidence, refer or relate to investor relations calls regarding Adaptec, Inc. or ADPT Corp. in 2009 or 2010.

2.    All call logs for Adaptec, Inc. or ADPT Corp. for 2009 and 2010.

3.    Produce any and all recordings, transcripts of recordings and notes of telephone calls between Adaptec, Inc. / ADPT Corp. and William J. Baxley.

4.    Produce any and all strategic plans and/or business plans, and any documents related to those plans, for Adaptec, Inc., ADPT Corp., and/or Steel Excel from 2008 to the present.

5.    Produce any and all documents related to the financial strategy of Adaptec, Inc., ADPT Corp. and/or Steel Excel from 2008 to present.

6.    Produce any and all documents related to Adaptec's goals or plans from 2008 through 2010 for utilization of Adaptec's cash reserves and/or carryforward tax losses.

7.    Produce any and all documents which reflect, refer or relate to communications between Jack L. Howard and any of the other Steel Partners regarding Steel Excel.

This the 11th day of June, 2018.

                                        /s/ Sharon D. Stuart
                                        DEBORAH ALLEY SMITH

5

SHARON D. STUART
Attorneys for Plaintiffs

OF COUNSEL:
CHRISTIAN & SMALL LLP
1800 Financial Center
505 North 20th Street
Birmingham, AL 35203
(205) 795-6588
dasmith@csattorneys.com
sdstuart@csattorneys.com

**DEFENDANTS TO BE SERVED BY CERTIFIED MAIL WITH THE SUMMONS AND COMPLAINT, TOGETHER WITH ALL DISCOVERY**



AlaFile E-Notice

01-CV-2018-902344.00

To:   SHARON D. STUART
      sdstuart@csattorneys.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

WILLIAM BAXLEY J ET AL V. JACK L HOWARD ET AL
01-CV-2018-902344.00

The following alias summons was FILED on 7/12/2018 2:16:53 PM

Notice Date:      7/12/2018 2:16:53 PM

ANNE-MARIE ADAMS
CIRCUIT COURT CLERK
JEFFERSON COUNTY, ALABAMA
JEFFERSON COUNTY, ALABAMA
716 N. RICHARD ARRINGTON BLVD.
BIRMINGHAM, AL, 35203

205-325-5355
anne-marie.adams@alacourt.gov



AlaFile E-Notice

01-CV-2018-902344.00

To:  HOWARD JACK L
     212 W. 18TH STREET
     APT. 11E
     NEW YORK, NY, 10011

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

WILLIAM BAXLEY J ET AL V. JACK L HOWARD ET AL
01-CV-2018-902344.00

The following alias summons was FILED on 7/12/2018 2:16:53 PM

Notice Date:     7/12/2018 2:16:53 PM

ANNE-MARIE ADAMS
CIRCUIT COURT CLERK
JEFFERSON COUNTY, ALABAMA
JEFFERSON COUNTY, ALABAMA
716 N. RICHARD ARRINGTON BLVD.
BIRMINGHAM, AL, 35203

205-325-5355
anne-marie.adams@alacourt.gov



AlaFile E-Notice

01-CV-2018-902344.00

To:   STEEL EXCEL, INC. (PRO SE)
      THE CORPORATION TRUST CO
      1209 ORANGE STREET
      WILMINGTON, DE, 19801-0000

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

WILLIAM BAXLEY J ET AL V. JACK L HOWARD ET AL
01-CV-2018-902344.00

The following alias summons was FILED on 7/12/2018 2:16:53 PM

Notice Date:      7/12/2018 2:16:53 PM

ANNE-MARIE ADAMS
CIRCUIT COURT CLERK
JEFFERSON COUNTY, ALABAMA
JEFFERSON COUNTY, ALABAMA
716 N. RICHARD ARRINGTON BLVD.
BIRMINGHAM, AL, 35203

205-325-5355
anne-marie.adams@alacourt.gov

| State of Alabama<br>Unified Judicial System<br>Form C-34   Rev. 4/2017 | **SUMMONS**<br>**- CIVIL -** | **Court Case Number**<br>01-CV-2018-902344.00 |
|---|---|---|

## IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA
### WILLIAM BAXLEY J ET AL V. JACK L HOWARD ET AL

**NOTICE TO:** HOWARD JACK L, 212 W. 18TH STREET APT. 11E, NEW YORK, NY 10011

*(Name and Address of Defendant)*

THE COMPLAINT OR OTHER DOCUMENT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT, AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT OR OTHER DOCUMENT, WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF(S) OR ATTORNEY(S) OF THE PLAINTIFF(S), SHARON D. STUART,

*(Name(s) of Attorney(s))*

WHOSE ADDRESS(ES) IS/ARE: 500 NORTH 20TH STREET, SUITE 1800, BIRMINGHAM, AL 35203.

*(Address(es) of Plaintiff(s) or Attorney(s))*

THE ANSWER MUST BE MAILED OR DELIVERED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT OR OTHER DOCUMENT WERE SERVED ON YOU OR A JUDGMENT BY DEFAULT MAY BE RENDERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT OR OTHER DOCUMENT.

### TO ANY SHERIFF OR ANY PERSON AUTHORIZED BY THE ALABAMA RULES OF CIVIL PROCEDURE TO SERVE PROCESS:

[☑] You are hereby commanded to serve this Summons and a copy of the Complaint or other document in this action upon the above-named Defendant.

[☐] Service by certified mail of this Summons is initiated upon the written request of _____

pursuant to the Alabama Rules of the Civil Procedure.                    *(Name(s))*

7/12/2018 2:16:53 PM                    /s/ ANNE-MARIE ADAMS                    By: _____
*(Date)*                                   *(Signature of Clerk)*                                   *(Name)*

[☐] Certified Mail is hereby requested.      _____

*(Plaintiff's/Attorney's Signature)*

## RETURN ON SERVICE

[☐] Return receipt of certified mail received in this office on _____.

*(Date)*

[☐] I certify that I personally delivered a copy of this Summons and Complaint or other document to _____

_____ in _____ County,
*(Name of Person Served)*                                   *(Name of County)*

Alabama on _____.
*(Date)*

_____      _____      _____
*(Type of Process Server)*                    *(Server's Signature)*                    *(Address of Server)*

                    _____      _____
                    *(Server's Printed Name)*                    *(Phone Number of Server)*